**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CHERRELL CARSON FOOTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV1200 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Cherrell Carson Footman, brought this action pro se pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entry 13 at 1-6; Docket Entry 14; see also Docket Entry 13 at 7-19 (Plaintiff's Brief); Docket Entry 15 (Defendant's Memorandum); Docket Entry 17 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of September 7, 2016. (Tr. 279-98.) Upon denial of those applications initially (Tr. 100-41, 190-202) and on reconsideration

(Tr. 142-87, 205-23), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 224). Plaintiff, her non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 34-76.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-27). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 278, 440-43), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2020.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since September 7, 2016, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: chronic venous insufficiency; peripheral neuropathy; degenerative disc disease; bilateral carpal tunnel syndrome; Sjogren's syndrome; right Achilles tendinitis; asthma; obesity; major depressive disorder; and anxiety.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except that [she] can stand/walk up to two hours in an eight hour day; sit up to six hours in an eight hour day; only occasionally push/pull with the bilateral lower

2

extremities; can only occasionally balance, stoop, kneel, crouch, and crawl; can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can perform frequent bilateral handling and fingering; must avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants; must avoid working at unprotected heights; is limited to performing simple, routine tasks and maintaining concentration, persistence, and pace for two-hour periods during the workday; and requires a stable work environment, which means few and infrequent changes to the work routine.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from September 7, 2016, through the date of this decision.

(Tr. 17-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has

3

not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at

4

176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')]

_____

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

available in the community," the claimant qualifies as disabled. _Hines_, 453 F.3d at 567.[4]

## B. Assignments of Error

As a threshold matter, although Plaintiff's instant Motion lists 37 generalized grounds on which she seeks to challenge the ALJ's decision (see Docket Entry 13 at 1-5), Plaintiff's Brief narrows those 37 grounds down to 13 issues for review (see id. at 8-10). Three of those issues, however, lack applicability to this case. In issue one, Plaintiff "[o]bject[s] to the Commissioner's motion to dismiss on asserting the affirmative defense of res judicata" (id. at 8); however, the Commissioner did not file a motion to dismiss in this case (see Docket Entries dated Jan. 13, 2020, to present), and the ALJ in this matter did not find that res judicata applied to the prior ALJ's decision (see Tr. 12-27; see also Tr. 77-94). Issue eight challenges the ALJ's reliance on the Medical-Vocational Guidelines ("Grids") (see Docket Entry 13 at 9), but the ALJ relied on the testimony of a VE, and not the Grids, in deciding Plaintiff's case at step five of the SEP (see Tr. 26-27). In issue 13, Plaintiff objects to the ALJ "not considering [Plaintiff]'s work activity to be an unsuccessful work attempt"

_____

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

(Docket Entry 13 at 10), but Plaintiff indicated on a Disability Report that she stopped working on her onset date (see Tr. 321-22), and the ALJ did not find that Plaintiff had engaged in any substantial gainful activity since her onset date (see Tr. 17). Thus, the Court should deny as meritless issues one, eight, and 13 in Plaintiff's Brief.

Moreover, in issues seven and 10, Plaintiff challenges a prior ALJ's determination that Plaintiff did not qualify as "disabled" under the Act from June 24, 2013, to March 8, 2016. (See Docket Entry 13 at 9, 10; see also Tr. 77-94.) However, as Plaintiff did not seek review of the prior decision with the Appeals Council (see Tr. 318), Plaintiff has lost any right to judicial review of the prior ALJ's decision in this Court, see 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5); see also 20 C.F.R. §§ 404.900(b), 416.1400(b) ("If [a claimant is] dissatisfied with [the SSA's] decision in the review process, but do[es] not take the next step within the stated time period, [the claimant] will lose [his or her] right to . . . judicial review.").[5] Accordingly, the Court should deny issues

---

[5] Plaintiff's Reply appears to argue that the ALJ "constructively" reopened the prior ALJ's decision (Docket Entry 17 at 14) because the ALJ "consider[ed] the evidence from [Plaintiff's] first application with regard to the merit of the case" and/or "admit[ted] evidence from the prior period" and/or "ma[d]e findings of fact about that evidence" and/or "ask[ed] questions about the prior period" (id. at 15). Although Plaintiff references a holding of the United States Court of Appeals for the Tenth Circuit in support of her argument, Plaintiff provides no citation to a specific case. (Id.) Plaintiff's attempt to argue a constructive (or "de facto") reopening of her prior claims for benefits fails for two reasons. First, the United States Court of Appeals for the Fourth Circuit has recognized an exception to the "general rule" that "federal courts lack
(continued...)

seven and 10 in Plaintiff's Brief, to the extent they raise grounds related to the prior ALJ's decision.

In addition to the remaining, listed issues on review in Plaintiff's Brief (see Docket Entry 13 at 8-10), Plaintiff also raises additional issues in the argument portion of her Brief (see, e.g., id. at 18 (arguing that ALJ erred in not allowing Plaintiff's witnesses to testify). After affording Plaintiff's Motion and Brief the liberal construction due such pro se filings, see Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), the Court should construe Plaintiff's remaining assignments of error as the following:

1) "the ALJ failed to properly evaluate and determined [sic] whether [Plaintiff]'s impairment met or medically equaled the listing for several severe impairments singly or combined" (Docket Entry 13 at 8);

---

[5](...continued)
jurisdiction to review a decision by the [Commissioner] not to reopen a previous claim for benefits" where "a claim that otherwise would be barred by res judicata has been, in effect, reconsidered on the merits at the administrative level." Kasey v. Sullivan, 3 F.3d 75, 78 (4th Cir. 1993) (emphasis added) (citing McGowen v. Harris, 666 F.2d 60, 65-66 (4th Cir. 1981)). Here, Plaintiff made no motion at the hearing to reopen her prior claims for benefits (see Tr. 34-76) and thus no "decision by the [Commissioner] not to reopen [Plaintiff's] previous claim[s] for benefits" exists for which an exception under McGowen could apply, Kasey, 3 F.3d at 78. Second, in the ALJ's decision, she did not rely on evidence pre-dating Plaintiff's alleged onset date of September 7, 2016, except when necessary to describe Plaintiff's medical history. (See, e.g., Tr. 18 (noting that Plaintiff "ha[d] a history of deep vein thrombosis and ha[d] previously undergone multiple procedures to address blood clots" (emphasis added) (citing Tr. 1328 and hearing testimony)), 22 (observing that Plaintiff "ha[d] a history of mild multilevel degenerative changes of the spine that predate[d] the relevant period herein (emphasis added) (citing Tr. 876).) Accordingly, no basis exists for the Court to find that the ALJ "constructively" reopened Plaintiff's prior claims for benefits.

10

2)     "the ALJ fail[ed] to consider the combined effect of all of [Plaintiff]'s impairments in determining severity by not considering [Plaintiff]'s subjective symptoms in determining severity" (id. at 9);

3)     "the ALJ erred in determining [Plaintiff]'s RFC at steps 4 and 5 mental included ins [sic] step 5 in the [SEP]" and "in failing to consider the effect of [Plaintiff]'s mental impairment on her RFC" (id.);

4)     the "ALJ err[ed] by not considering [primary care physician ('PCP')] work restrictions" and "in ignoring, without explanation, the opinions and findings of [Plaintiff]'s treating physician as to [Plaintiff's] functional limitations" (id.);

5)     "the ALJ err[ed] in determining that [Plaintiff] could perform the full range of limited sedentary work" (id.);

6)     "the ALJ err[ed] in failing to consider [Plaintiff]'s non-exertional impairment of i.e., pain involving the hands, the upper extremity, depression, etc. and its effect on her ability to perform the full range of sedentary . . . work . . . [a]ccording to [F]ourth [C]ircuit law" (id. at 10);

7)     "the ALJ err[ed] in assigning great weight to prior ALJ decision and applying Albright" (id.);

8)     the "ALJ err[ed] by not resolving conflict between past work and other work" (id.);

11

9)  the ALJ erred by failing to allow Plaintiff's witnesses to testify at the hearing (see id. at 18);

10)  Plaintiff "seek[s] a remand on the basis of new evidence under 42 U.S.C.A. § 405(g)" (id. at 11; see also id. at 8 (requesting remand "due to the existence of new and material evidence and good cause for the failure to submit the evidence previously").

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 15 at 14-25.)

### 1. Listings 1.02, 11.14, and 14.10

Plaintiff first contends that "the ALJ failed to properly evaluate and determined [sic] whether [Plaintiff]'s impairment met or medically equaled the listing for several severe impairments singly or combined" (Docket Entry 13 at 8; see also Docket Entry 17 at 6-9.)  More specifically, Plaintiff argues that her "Sjögren's syndrome and Axonal Sensory Poly Peripheral Neuropathy and dysfunction of bones and joints were not evaluated at step three of the [SEP]," and that her "Sjögren's syndrome severely affects several body systems."  (Docket Entry 13 at 13.)  That argument does not entitle Plaintiff to relief.

"The [L]istings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  Each impairment is defined in terms of

12

several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular [L]isting." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a Listing], no matter how severely, does not qualify.").

Contrary to Plaintiff's allegations, at step three of the SEP, the ALJ here specifically considered Listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)"), 11.14 ("Peripheral neuropathy"), and 14.10 ("Sjögren's syndrome"), see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.02, 11.14, 14.10. (See Tr. 18-19.) The ALJ found that Plaintiff's impairments did not meet or equal the criteria of Listing 1.02, because Plaintiff's evidence had shown neither an inability to ambulate effectively nor an inability to perform fine and gross movements effectively. (Tr. 18.)[6] The ALJ next found, with regard to Plaintiff's peripheral neuropathy, that "[t]he record d[id] not reflect disorganization of motor

---

[6] "Inability to ambulate effectively means an extreme limitation of the ability to walk . . . [and] is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B.2.b (emphasis added) (internal citation omitted). Thus, Plaintiff's use of a cane, even assuming its medical necessity, would not demonstrate an "inability to ambulate effectively."

13

function in two extremities resulting in an extreme limitation or marked limitations in physical functioning so as to meet or medically equal the criteria of [L]isting 11.14." (Tr. 19.)[7] Concerning Listing 14.10, the ALJ found that "the record does not evidence involvement of two or more organs/body systems with one organ/body system involved to a moderate level of severity and at least two constitutional symptoms or signs; or repeated manifestations of Sjogren's syndrome with at least two constitutional symptoms and a marked limitation in activities of daily living, social functioning or the ability to complete tasks in a timely manner." (Id.) Plaintiff has not pointed to any record evidence to contradict the ALJ's findings in that regard. (See Docket Entries 13, 17.)

Put simply, the ALJ did not err in the application of Listings 1.02, 11.14, and 14.10.

## 2. Subjective Symptoms

Plaintiff next asserts that "the ALJ fail[ed] to consider the combined effect of all of [Plaintiff]'s impairments in determining severity by not considering [Plaintiff]'s subjective symptoms in determining severity." (Docket Entry 13 at 9.) Plaintiff further

_____

[7] Under Listing 11.14, an "extreme limitation" in the abilities to stand up from a seated position or to maintain balance in a standing position and while walking means that an individual is "unable to stand and maintain an upright position" or "unable to maintain an upright position while standing or walking without the assistance of another person or . . . two canes." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.00D.2 (emphasis added).

14

observes that "[t]here is critical difference in daily activities of life and full time work," and notes that, with daily activities, she "can structure [he]r pace[ and] get assistance from family, friends and neighbors," but that such accommodations and assistance do not exist "in a work setting." (Docket Entry 17 at 3.) Those allegations fall short.

Social Security Ruling 16-3p, <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p") (consistent with the Commissioner's regulations) adopts a two-part test for evaluating a claimant's statements about symptoms. <u>See</u> SSR 16-3p, 2017 WL 5180304, at *3; <u>see also</u> 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." <u>Id.</u> Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." <u>Id.</u>

15

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

16

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

As an initial matter, and contrary to Plaintiff's contentions, the ALJ clearly considered the combined effect of Plaintiff's impairments. For example, the ALJ expressly found that Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments" (Tr. 18 (emphasis added)) and further determined that "[t]he severity of [Plaintiff]'s mental impairments, considered singly and in combination, d[id] not meet or medically equal the criteria of [L]istings 12.04 and 12.06" (Tr. 19 (emphasis added)). Similarly, in explaining the basis for the RFC, the ALJ noted that Plaintiff's "combined physical impairments support[ed] limiting [her] to sedentary exertional work with reduced postural activity and restricted exposure to hazards." (Tr. 23.) Absent a concrete showing that the ALJ did not in fact consider the combined effect of Plaintiff's impairments (which Plaintiff did not provide), the Court may take the ALJ at her word, see Bell v. Berryhill, No. CV 9:17-1951, 2018 WL 4560719, at *11 (D.S.C. June 20, 2018) (unpublished) (holding that court should take ALJ "at her word when she states that she considered all of the claimant's impairments in

17

combination" (citing <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2008))), <u>recommendation adopted</u>, 2018 WL 3912952 (D.S.C. Aug. 16, 2018) (unpublished).

The ALJ also properly considered Plaintiff's ability to engage in activities of daily living as <u>one component</u> of the ALJ's evaluation of Plaintiff's subjective symptom reporting. The ALJ considered Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms" (Tr. 23), but found such statements "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 23). As further explicated by the ALJ:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of . . . her symptoms, they are not wholly consistent with the evidence of record. The most recent medical records show that [Plaintiff] exhibited a normal gait with full strength and a normal range of motion. [Plaintiff] has reported that Cymbalta helps improve her mood and pain. Other than medication, treatment has been conservative and [Plaintiff] has not required surgical intervention or physical therapy treatment. <u>[Plaintiff] has reported that she is independent in matters of personal care, has been able to serve as the primary caretaker of her young child, and can perform light housework, prepare meals, and manage her own finances</u>. She reported no history of mental health counseling or inpatient psychiatric hospitalization.

(<u>Id.</u> (emphasis added).) Significantly, Plaintiff makes no argument that the ALJ's above-emphasized description of Plaintiff's ability to engage in daily activities inaccurately describes or overstates them. (<u>See</u> Docket Entries 13, 17.)

18

In short, Plaintiff has not shown that the ALJ erred with respect to her evaluation of Plaintiff's subjective symptoms.

### 3. Mental RFC

Next, Plaintiff maintains that "the ALJ erred in determining [Plaintiff]'s RFC at steps 4 and 5 mental included ins [sic] step 5 in the [SEP]" and "in failing to consider the effect of [Plaintiff]'s mental impairment on her RFC." (Docket Entry 13 at 9.) In that regard, Plaintiff argues that her "medically determinable impairments significantly limit the ability to perform basic work activities as required by [Social Security Ruling 85-28, Titles II and XVI: Medical Impairments That are Not Severe, 1985 WL 56856 (1985) ('SSR 85-28')] including the inability to adjust to ordinary emotional stresses without significant difficulty." (Id. at 18-19.) Plaintiff additionally appears to argue that the ALJ failed to perform the "special technique" required by the regulations for evaluating mental impairments. (Docket Entry 17 at 10-13 (citing 20 C.F.R. § 404.1520a, and Patterson v. Commissioner of Soc. Sec. Admin., 846 F.3d 656 (4th Cir. 2017)).) Plaintiff's arguments miss the mark.

As an initial matter, the ALJ did perform the "special technique" required by Sections 404.1520a and 416.920a in evaluating Plaintiff's mental impairments. The ALJ found, at step two of the SEP, that Plaintiff's depression and anxiety qualified as severe impairments (see Tr. 18) and, at step three, rated the

19

degree of limitation caused by Plaintiff's depression and anxiety in the four areas of mental functioning (see Tr. 19-20). In that regard, the ALJ deemed Plaintiff mildly limited in her abilities to understand, remember, and apply information (see Tr. 19), as well as to interact with others (see Tr. 20). The ALJ also found moderate limitations in Plaintiff's abilities to concentrate, persist, or maintain pace and to adapt or manage herself. (See id.) As a result, the ALJ determined that Plaintiff's mental impairments did not meet or medically equal Listings 12.04 or 12.06 (see Tr. 19-20), and proceeded to formulate Plaintiff's physical and mental RFC (see Tr. 21-25). That course of analysis follows the "special technique" dictated for mental impairments. See 20 C.F.R. §§ 404.1520a, 416.920a. The Patterson case, therefore, lacks applicability to this matter, as the Fourth Circuit therein addressed for the first time whether an ALJ's failure to conduct the special technique could qualify as harmless error. See Patterson, 846 F.3d at 657.

Next, in formulating the mental RFC, the ALJ noted that "[f]indings relating to [Plaintiff]'s depression and anxiety support limiting [Plaintiff] to simple work in a controlled environment." (Tr. 23.) Consistent with that understanding, the ALJ limited Plaintiff "to performing simple, routine tasks and maintaining concentration, persistence, and pace for two-hour periods during the workday . . . [as well as] a stable work

environment, which mean[t] few and infrequent changes to the work routine." (Tr. 21 (bold font omitted).) The ALJ further explained the basis for the mental RFC in the evaluation of the opinion evidence regarding Plaintiff's mental impairments:

> State agency psychological consultants indicated that [Plaintiff] may have some difficulty adapting to changes in the workplace, but should be able to adapt to routine changes in a stable work environment, even involving some complex tasks. While these consultants were able to review available evidence of record, they did not personally examine [Plaintiff] to support their conclusions. Their conclusions are mostly supported by the evidence of record, which indicates [Plaintiff] to have no history of mental health treatment, but I find it appropriate to add additional limitations to restrict [Plaintiff] to simple work, based on [Plaintiff]'s difficulty handling stress, cognitive deficits described the consultative examiner, and the indication by a treating source that [Plaintiff]'s pain causes attention deficits. These opinions are partially persuasive.

> I have considered the assessment of consultative psychological examiner Gregory Villarosa, Ph.D. and find it to be persuasive. Dr. Villarosa indicated that [Plaintiff] is able to retain and follow simple instructions and would likely have some difficulty handling the stress and pressures associated with day-to-day work activity. Dr. Villarosa was able to personally examine [Plaintiff] and provided a detailed report to support his conclusions. His assessment is generally consistent with the evidence of record, which indicates that, despite a lack of mental health treatment, [Plaintiff] experiences a range of depressive and anxious symptoms that have reduced [Plaintiff]'s functioning and support a limitation to simple work.

(Tr. 24 (internal parenthetical citations omitted).) Plaintiff simply has not shown that the record evidence compelled the ALJ to adopt further limitations on Plaintiff's ability to handle stress (or any other mental limitations).

21

In light of the foregoing, Plaintiff has failed to demonstrate entitlement to relief on the basis of the mental RFC.

### 4. Treating Source Opinions

Plaintiff next argues that the "ALJ err[ed] by not considering PCP work restrictions" and "in ignoring, without explanation, the opinions and findings of [Plaintiff]'s treating physician as to [Plaintiff's] functional limitations." (Docket Entry 13 at 9.) More specifically, Plaintiff maintains that "Dr. Jonathan Edwards . . . was [P]laintiffs [sic] PCP" and that "[t]he ALJ erred in failing to accord 'controlling weight'" to Dr. Edwards's opinions "in the 2016 hearing" and by "[i]gnoring, without explanation, the opinions and findings of [Dr. Edwards] as to [Plaintiff's] functional limitations [in] a second opinion [on] May 7, 2016." (Id. at 18 (emphasis added) (citing Tr. 357-66 (Dr. Edwards's opinions dated Feb. 24, 2014, and May 7, 2016)).)

As discussed above, Plaintiff cannot challenge the findings of the prior ALJ's decision in this action, as Plaintiff did not exhaust her administrative remedies with respect to that prior decision (see Tr. 318), and thus lost her right to judicial review of that decision, see 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5); see also 20 C.F.R. §§ 404.900(b), 416.1400(b). Moreover, the current ALJ expressly stated that she would not evaluate any opinions that pre-dated Plaintiff's alleged onset date:

22

> I have not provided articulation about the evidence that
> is inherently neither valuable nor persuasive in
> accordance with 20 CFR 404.1520b(c) and 416.920b(c).
> <u>Assessments made prior to [Plaintiff]'s alleged onset</u>
> <u>date are not valuable or persuasive, as they do not</u>
> <u>reflect [Plaintiff]'s functioning during the relevant</u>
> <u>period</u>.

(Tr. 23 (emphasis added).)

Nevertheless, Plaintiff does allege that "[t]he ALJ erred in determining [Plaintiff]'s RFC in the [SEP]" (Docket Entry 13 at 15 (citing Tr. 17-18)), and that "[i]mproper consideration of limitations was given by the ALJ by failing to give adequate weight to the opinion of the treating sources [sic] FCE stating [P]laintiff has substantial work related limitations" (<u>id.</u>). Plaintiff's citation to the <u>current</u> ALJ's opinion and reference to a "treating source[']s . . . work[-]related limitations" (<u>id.</u>) suggests that the Court should review whether the <u>current</u> ALJ properly evaluated the opinions of Lindsey Abrahamse, FNP-C, Plaintiff's treating Family Nurse Practitioner and the only treating source who offered opinions as to Plaintiff's functional abilities during the relevant period.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (<u>see</u> Tr. 278-98)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. <u>See</u> Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs are no

longer required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[8] Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in

---

[8] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2017). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2017).

evaluating the persuasiveness of an opinion or a finding. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[9] The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)3). The new regulations further deem "inherently neither valuable nor persuasive," 20 C.F.R. §§ 404.1520b(c), 416.920b(c), "[s]tatements on issues reserved to the Commissioner," 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3), such as statements that a claimant does not qualify as disabled or remains unable to work, 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

The ALJ here evaluated the persuasiveness of Nurse Abrahamse's opinions as follows:

> I have considered the medical source statements of Lindsey Abrahamse, FNP-C. In June 2017, [Nurse] Abrahamse found [Plaintiff] to be capable of light

---

[9] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

exertional work with occasional postural activity except for never crawling, and additional manipulative and environmental restrictions. [Nurse] Abrahamse has a treating relationship with [Plaintiff] and was able to rely on her history with [Plaintiff] to support her findings with an explanation of [Plaintiff]'s symptoms. The postural, manipulative, and environmental limitations are generally persuasive; however, the evidence of record suggests that [Plaintiff]'s condition has somewhat worsened since the time of this assessment, which suggests a reduction to sedentary exertional work, supported by assessments of Achilles tendinitis and bilateral carpal tunnel syndrome. In July 2018, [Nurse] Abrahamse indicated that [Plaintiff] could only occasionally lift up to five pounds and could only stand/walk less than one hour in a normal day. She indicated that [Plaintiff] would need the ability to lie down throughout the day and would require extensive unscheduled breaks. She stated that [Plaintiff] would have greatly reduced ability to perform postural and manipulative activities and that she would need the use of a cane for ambulation. [Nurse] Abrahamse indicated that [Plaintiff] would be absent from work more than three times per month due to her impairments. She further indicated [Plaintiff] to have deficits to her concentration, attention, and ability to handle stress due to depression. The extent of these limitations are not consistent with the evidence or record. On recent exam, [Plaintiff] exhibited a normal gait with full strength and range of motion. [Plaintiff]'s carpal tunnel syndrome has been noted to impact only her sensory nerves with all other nerves within normal limits. Furthermore, [Nurse] Abrahamse, as a FNP-C, does not appear to be a mental health expert for purposes of qualifying her mental limitations. [Nurse] Abrahamse's July 2018 assessment is found to be unpersuasive. In November 2018, [Nurse] Abrahamse indicated that [Plaintiff] was unable to work due to her combined impairments. It is noted that determinations of a claimant's ability to work are an issue reserved to the Commissioner. In this instance, [Nurse] Abrahamse did not assess specific vocational limitations and her assessment is not persuasive. However, the medical record does not evidence a precipitating event or reduced functioning to a degree that would justify the stark contrast in [Nurse] Abrahamse's statements regarding

26

> [Plaintiff]'s functional capacity from June 2017 to
> November 2018. [Plaintiff] reported that she has
> maintained her independence in matters of personal care.

(Tr. 24-25 (emphasis added).) As the above-emphasized language
makes clear, the ALJ's analysis comports with the new regulations,
as she properly considered the supportability and consistency of
Nurse Abrahamse's opinions, as well as disregarded Nurse
Abrahamse's opinion that Plaintiff lacked the ability to work as a
matter reserved to the Commissioner. (Id.) Although not required
by the regulations, the ALJ also considered the nature of Nurse
Abrahamse's treatment relationship with Plaintiff and Nurse
Abrahamse's area of specialization. (Id.)

In sum, Plaintiff has not demonstrated entitlement to reversal
or remand arising out of the ALJ's evaluation of treating source
opinions.

### 5. Physical RFC

Plaintiff additionally argues that "the ALJ err[ed] in
determining that [Plaintiff] could perform the full range of
limited sedentary work." (Docket Entry 13 at 9.) In that regard,
Plaintiff contends that, in her applications for benefits, she
"stated that [she] was disabled because of poly-neuropathy both
feet up to knee on right leg; post venal thrombosis and edema;
anxiety; depression; hypertension; high cholesterol; arthritis;
further Ehlers Danlos syndrome and joint laxity, Marfan
syndrome/joint laxity, asthma and allergy; chronic body pain; back

27

pain; right hand; intestines; colitis; and blurred vision however all of Plaintiff's medical conditions and effects were not considered in the RFC." (Id. at 17 (internal citation and stray comma omitted).) In addition, Plaintiff appears to argue that the ALJ should have included a sit/stand option in the RFC. (Id. at 14-15.) Those contentions fail as a matter of law.

In contrast to Plaintiff's arguments, the ALJ's decision demonstrates that she discussed and considered nearly all of the impairments that Plaintiff contends disabled her. (See Tr. 18-25.) At step two of the SEP, the ALJ found that Plaintiff's "chronic venous insufficiency[,] peripheral neuropathy[,] degenerative disc disease[,] bilateral carpal tunnel syndrome[,] Sjogren's syndrome[,] right Achilles tendinitis[,] asthma[,] obesity[,] major depressive disorder[,] and anxiety" constituted severe impairments that "significantly limit[ed Plaintiff's] ability to perform basic work activities." (Tr. 18 (bold font omitted).) In addition, the ALJ evaluated Plaintiff's colitis, irritable bowel syndrome, hyperlipidemia, glaucoma/blurred vision, and deep vein thrombosis, but found that such impairments caused Plaintiff no more than a minimal limitation on her ability to perform work-related abilities and thus qualified as non-severe. (Id.)

In the ALJ's discussion of the RFC, she expressly acknowledged Plaintiff's testimony "that she experience[d] chronic pain throughout her body" (Tr. 21 (emphasis added)) but, as discussed

28

above, found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent with the medical evidence" (Tr. 23). As for Plaintiff's allergies, the ALJ noted that Plaintiff "underwent sinus surgery after complaining of worsening sinus issues in May 2018," but noted that she "reported feeling better with improved breathing thereafter." (Tr. 22.)

Plaintiff correctly observes that the ALJ did not discuss Plaintiff's "hypertension," "Ehlers Danlos syndrome and joint laxity," or "Marfan syndrome/joint laxity" (Docket Entry 13 at 17) in the decision. (See Tr. 18-25.) However, the ALJ's omissions in that regard do not amount to error, much less reversible error, for two reasons. First, no diagnosis of Ehlers-Danlos Syndrome or Marfan Syndrome exists in the record. The transcript page Plaintiff cites as reflecting a diagnosis of Ehlers-Danlos Syndrome actually reflects that Plaintiff "was seen by genetics for [E]hlers[-D]anlos" but that the providers deemed the "workup" "inconclusive." (Tr. 1943 (emphasis added).) Moreover, although Plaintiff's treating neurologist, Dr. Nikhil Balakrishnan, observed that Plaintiff displayed a tall, "Marfanoid" body habitus (Tr. 459) and noted "hyperextensibility" of the interphalangeal joints of Plaintiff's long fingers (Tr. 460), Dr. Balakrishnan did not diagnose Plaintiff with Marfan Syndrome (see Tr. 460).

29

Second, Plaintiff does not explain how a discussion of Plaintiff's "joint laxity" and/or hypertension by the ALJ would have led to greater restrictions in the RFC. (See Docket Entries 13, 17.) The ALJ explained his decision-making process with respect to the physical RFC as follows:

> [Plaintiff]'s combined physical impairments support limiting [Plaintiff] to sedentary exertional work with reduced postural activity and restricted exposure to hazards. [Plaintiff]'s neuropathy, venous insufficiency and carpal tunnel syndrome suggest limiting [Plaintiff]'s manipulative activities. [Plaintiff]'s history of asthma supports reduced exposure to pulmonary irritants.

(Tr. 23.) In formulating a physical RFC in accordance with that analysis, the ALJ restricted Plaintiff to sedentary work involving standing and walking up to two hours and sitting up to six hours in an eight-hour workday, occasional pushing and pulling with the bilateral lower extremities, occasional postural movements, frequent climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, frequent bilateral handling and fingering, no concentrated exposure to pulmonary irritants, and no working at unprotected heights. (Tr. 21.) Plaintiff simply has not shown that an express discussion of joint laxity and/or hypertension by the ALJ would have resulted in a more favorable outcome in her case.

Plaintiff's apparent assertion that the ALJ erred by failing to include a sit/stand option in the RFC (see Docket Entry 13 at 14-15) fares no better. Although Nurse Abrahamse opined in a

Medical Source Statement dated July 20, 2018 (see Tr. 2004-10), that Plaintiff could sit for less than 15 minutes at a time and could stand or walk for less than 15 minutes at a time (see Tr. 2006), as discussed above, the ALJ found such extreme sitting and standing limitations "unpersuasive" (Tr. 24) and did not err in so finding. Plaintiff does not provide any other evidentiary basis for including a sit/stand option in the RFC. (See Docket Entries 13, 17.)

As a result of the foregoing analysis, the Court should find that the ALJ did not reversibly err in evaluating Plaintiff's RFC.

### 6. Non-Exertional Limitations

Plaintiff also contends that "the ALJ err[ed] in failing to consider [Plaintiff]'s non-exertional impairment of i.e., pain involving the hands, the upper extremity, depression, etc. and its effect on her ability to perform the full range of sedentary . . . work . . . [a]ccording to [F]ourth [C]ircuit law." (Docket Entry 13 at 10.) In addition, Plaintiff appears to argue that the ALJ improperly relied on the Grids in deciding that Plaintiff did not qualify as disabled at step five of the SEP, because Plaintiff's non-exertional limitations precluded the ALJ from relying on the Grids. (See id. at 16.) Those contentions fall short.

At step five of the SEP, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform considering his or her age,

Case 1:19-cv-01200-CCE-LPA   Document 18   Filed 11/16/20   Page 31 of 41

education, work experience, and RFC. See Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "The Commissioner may meet this burden by relying on the [Grids] or by calling a [VE] to testify." Aistrop v. Barnhart, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566). As to the former:

> The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'

Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

As discussed above, the ALJ properly discussed Plaintiff's impairments and sufficiently accounted for the exertional and non-exertional limitations caused by those impairments in the RFC. (See Tr. 18-25.) Moreover, the ALJ did not use the Grids at step five to direct a conclusion of disability; rather, the ALJ used Grid Rules 201.21 and 201.28 as a framework for decision, and relied on the testimony of a VE regarding other jobs available in significant numbers in the national economy that Plaintiff could

perform.  (See Tr. 26-27, 70-71.)  Notably, the dispositive hypothetical question to the VE contained the same non-exertional limitations as the ALJ included in the RFC.  (Compare Tr. 21, with Tr. 70-71.)[10]

Accordingly, Plaintiff's challenge based on the ALJ's assessment of Plaintiff's non-exertional limitations lacks merit.

### 7. Prior ALJ Decision

Additionally, Plaintiff asserts that "the ALJ err[ed] in assigning great weight to prior ALJ decision and applying Albright."  (Docket Entry 13 at 10.)  The ALJ, however, did not assign great weight to the prior ALJ's decision; rather, the current ALJ accorded the prior ALJ's decision only "some weight," because the current ALJ found that "new and material" evidence caused greater restrictions on Plaintiff's RFC than those found by the prior ALJ:

> [Plaintiff] was found not disabled in a final decision by an . . . ALJ[] dated March 8[] 2016, based on a prior application for disability benefits.  I find there is new and material evidence relating [Plaintiff]'s condition.

_____

[10] Plaintiff maintains that "a finding of 'disabled' is warranted for individuals age 45-49 who . . . [a]re restricted to sedentary work, [ a]re unskilled or have no transferable skills, [and h]ave no past relevant work or can no longer perform past relevant work."  (Docket Entry 13 at 14.)  Plaintiff misinterprets Table 1 of the Grids governing sedentary RFCs.  As Plaintiff's age during the relevant period spanned two different age categories ("younger individual aged 18-44" and "younger individual aged 45-49," (Tr. 25)), the ALJ used both Rule 201.28 (18-44) and 201.21 (45-49) as a framework for decision (see Tr. 26).  Those Rules apply to an individual (like Plaintiff) with at least a high school education (see Tr. 25), and with skilled or semi-skilled previous work experience, but no transferable skills.  See 20 C.F.R. Pt. 404, Subpt. P, App'x 2, §§ 201.21, 201.28.  Contrary to Plaintiff's allegations, both Rules direct a conclusion of "[n]ot disabled."  Id.

33

> The prior ALJ decision determined that [Plaintiff] retained the [RFC] to perform a reduced range of light exertional work. I find the medical evidence of record establishes that [Plaintiff]'s medical condition deteriorated. Among other issues, the medical evidence reveals that [Plaintiff]'s neuropathy has worsened since the time of the previous decision and new impairments have been diagnosed, as discussed in detail in the [decision]. Accordingly, <u>I do not adopt the [RFC] and findings of the prior ALJ</u> and afford the prior ALJ decision only <u>some weight</u> pursuant to Acquiescence Ruling (AR) 00-1(4).

(Tr. 15 (internal parenthetical citations omitted) (emphasis added).) The ALJ's decision to discount the prior ALJ's decision thus benefitted Plaintiff by reducing her RFC from light to sedentary exertion, increasing the restriction of postural movements, and adding manipulative and mental restrictions. (<u>Compare</u> Tr. 21, <u>with</u> Tr. 86.) Because Plaintiff cannot demonstrate that the ALJ's decision to discount the prior ALJ's decision prejudiced her, this issue on review fails.[11]

---

[11] Plaintiff's argument that "the ALJ err[ed] in . . . applying Albright" regarding her analysis of the prior ALJ's decision (Docket Entry 13 at 10) misses the mark. In the <u>Albright</u> decision, the United States Court of Appeals for the Fourth Circuit rebuffed the manner in which an ALJ treated a prior ALJ's denial of the claimant's previous application for benefits. <u>Albright</u>, 174 F.3d at 474-78. In that case, the new ALJ did not analyze whether the claimant's condition had worsened since the prior ALJ's decision, but rather simply adopted the prior ALJ's denial of benefits as <u>res judicata</u> based upon the SSA's Acquiescence Ruling 94-2(4) ("AR 94-2(4)"). <u>Id.</u> at 474, 475. AR 94-2(4) required ALJs to adopt findings from prior ALJ decisions unless the claimant produced new and material evidence relating to those findings. <u>Id.</u> The Fourth Circuit found the ALJ's application of AR 94-2(4) to the claimant's subsequent DIB and SSI claims "imprudent," <u>id.</u> at 477, and contrary to the SSA's long-standing "treatment of later-filed applications as separate claims," <u>id.</u> at 476. In response to <u>Albright</u>, the SSA issued Acquiescence Ruling 00-1(4), <u>(Interpreting Lively v. Secretary of Health and Human Services) – Effect of Prior Disability Findings on Adjudication of a Subsequent Disability Claim – Titles II and XVI of the Social Security Act</u>, 2000 WL 43774 (Jan. 12, 2000) ("AR 00-1(4)"), which requires ALJs "adjudicating a subsequent disability claim" to "consider
(continued...)

34

## 8. Conflict Between Past Work and Other Work

Plaintiff further contends that the "ALJ err[ed] by not resolving conflict between past work and other work." (Docket Entry 13 at 10.) No further discussion of this issue appears in either Plaintiff's Brief or Reply (see Docket Entries 13, 17) and thus the undersigned cannot clearly ascertain what Plaintiff means to allege in this issue on review. In any event, the ALJ labored under no obligation to resolve "conflicts" between Plaintiff's past relevant work ("PRW") and the three "other" occupations the VE cited (and the ALJ subsequently adopted) as within Plaintiff's RFC. The determinations of whether a claimant retains the RFC to perform his or her PRW at step <u>four</u> of the SEP and of whether that claimant can perform other jobs existing in significant numbers in the national economy at step <u>five</u> constitute entirely distinct steps in SEP. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Here, the ALJ found that Plaintiff could no longer perform her PRW (<u>see</u> Tr.

---

[11](...continued)
. . . a prior finding [of a claimant's RFC or other finding required at a step in the SEP] as evidence and give it appropriate weight in light of . . . such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." AR 00-1(4), 2000 WL 43774, at *4. Here, as quoted above, the ALJ's evaluation of the prior ALJ's decision complies with AR 00-1(4), as the ALJ properly considered "the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding," AR 00-1(4), 2000 WL 43774, at *4. (See Tr. 15.)

35

25) but adopted the VE's testimony that Plaintiff could perform other jobs available in significant numbers in the national economy (see Tr. 26-27, 70-71). Plaintiff has not established any reversible error in those determinations.[12]

### 9. Witnesses

Plaintiff next challenges the ALJ's refusal to allow Plaintiff's witnesses to testify at the hearing. (See Docket Entry 13 at 18.) According to Plaintiff, those witnesses' "testimony would have supported the structured settings and assistance given by sister that is CNA and friends to the daily activities of life and help with son." (Id.) That contention does not entitle Plaintiff to relief.

The Commissioner's regulations clearly accord claimants the right to present witnesses at administrative hearings. See 20 C.F.R. §§ 404.950(e), 416.1450(e) (permitting claimants to present witnesses at hearings); 20 C.F.R. §§ 404.929, 416.1429 (same). However, "[t]he ALJ determines the subject and scope of testimony from a claimant and any witness(es)", Hearings, Appeals, and Litigation Law Manual ("HALLEX"), § I-2-6-6o(A), 1993 WL 751900, and "the ALJ is not required to permit testimony that is repetitive

---

[12] Plaintiff asserts in her Reply that one of the jobs cited by the VE (see Tr. 71) and adopted by the ALJ (see Tr. 26), Call Out Operator, "no longer exists." (Docket Entry 17 at 5.) However, Plaintiff provides no citation to authority to support that assertion. (See id.) Moreover, the VE testified that 6,000 Call Out Operator jobs existed in the national economy, and Plaintiff did not challenge that testimony. (See Tr. 71, 73-74.)

or cumulative," HALLEX, § I-2-6-6o(B), 1993 WL 751900 (emphasis added).

In this case, at the close of the hearing, the following exchange took place between Plaintiff's non-attorney representative and the ALJ:

> REP: I thought they had informed you there was two witnesses but --
>
> ALJ: I don't need any witnesses.
>
> . . .
>
> REP: Okay.
>
> ALJ: I mean what are they going to tell me that she hasn't already told me?
>
> REP: Just basic <u>confirm how much they have to help her out on a daily</u> --
>
> ALJ: Well, I mean I believe her when she --
>
> REP: Okay.
>
> ALJ: -- says that, you know.
>
> REP: Well, I just want to make sure.
>
> ALJ: I don't need [sic] to just tell me the same thing she's going to tell me.
>
> REP: Okay. That's --
>
> ALJ: We normally have witnesses when people have like intellectual disabilities, they're not able to speak for themselves, and that kind of situation. But [Plaintiff] did fine. Okay?
>
> REP: Okay. Thank you.

(Tr. 74-75 (emphasis added).)

37

The ALJ did not err in disallowing Plaintiff's witnesses, as Plaintiff's non-attorney representative made clear that their testimony would "basic[ally] <u>confirm</u> how much they have to help [Plaintiff] out on a daily [basis]" (Tr. 75 (emphasis added)), and Plaintiff indicated in her Brief that the witnesses' "testimony would have supported the structured settings and assistance given by sister that is CNA and friends to the daily activities of life and help with son" (Docket Entry 13 at 18). Earlier in the hearing, Plaintiff testified that a friend would take her son to school when Plaintiff did not feel well enough to drive (<u>see</u> Tr. 57), that she usually rode with someone else to church and the grocery store (<u>see</u> Tr. 58), that her sister and a friend help her with cooking, cleaning, and folding clothes (<u>see</u> Tr. 59-60), and that her son's father engages in physical activities with her son (<u>see</u> Tr. 60). Thus, the witnesses' testimony qualifies as "repetitive [and] cumulative," HALLEX, § I-2-6-6o(B), 1993 WL 751900, and the ALJ did not err in disallowing it.

Plaintiff further faults the ALJ for "stat[ing that Plaintiff's] testimony was credible" in the above-quoted colloquy but then ultimately finding Plaintiff's statements about the "intensity, persistence, and . . . limiting effects" of her symptoms "not consistent" with the record evidence. (Docket Entry 13 at 18 (referencing Tr. 23, 74-75).) The ALJ, however, did not find <u>all</u> of Plaintiff's testimony "credible," but rather stated

38

that the ALJ "believe[d]" Plaintiff's testimony, discussed above, regarding the help she receives from her sister and her friend. (See Tr. 75; see also Tr. 57-60.) The ALJ's crediting of Plaintiff's testimony regarding the help she receives from others clearly did not bind the ALJ to find the entirety of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms consistent with the record.

In light of that analysis, Plaintiff's challenge to the ALJ's disallowance of Plaintiff's witnesses fails.

### 10. New Evidence

Lastly, Plaintiff "seek[s] a remand on the basis of new evidence under 42 U.S.C.A. § 405(g)." (Docket Entry 13 at 11; see also id. at 8 (requesting remand "due to the existence of new and material evidence and good cause for the failure to submit the evidence previously")．) In support of that argument, Plaintiff has attached new evidence to both her Motion/Brief and to her Reply. (See Docket Entry 13 at 20-136; see also Docket Entry 17 at 17-40.) As discussed below, Plaintiff's proffered evidence does not meet the standard for remand.

Under sentence six of Section 405(g), "a federal district court] may at any time order additional evidence to be taken before the Commissioner [ ], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding." 42 U.S.C. § 405(g) (emphasis added). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." <u>Wilkins v. Secretary of Dep't of Health & Human Servs.</u>, 953 F.2d 93, 95-96 (4th Cir. 1991). "Evidence . . . is material if there is 'a reasonable probability that the new evidence would have changed the outcome.'" <u>Meyer v. Astrue</u>, 662 F.3d 700, 705 (4th Cir. 2011) (quoting <u>Wilkins</u>, 953 F.2d at 96)).

The great majority of Plaintiff's proffered evidence lacks materiality, because it reflects treatment Plaintiff received in the fall of 2019 and the first half of 2020 (<u>see</u> Docket Entry 13 at 20-41, 46-134; <u>see also</u> Docket Entry 17 at 17-40), which post-dates the period adjudicated by the ALJ, i.e., September 7, 2016, to June 11, 2019 (<u>see</u> Tr. 27). Two records reflect treatment of Plaintiff during the relevant period (<u>see</u> Docket Entry 13 at 42-25, 135-36); however, Plaintiff has neither made any showing of materiality regarding those documents nor provided the Court with any basis for a finding of good cause for Plaintiff's failure to incorporate such evidence into the record while her case remained pending before the ALJ (<u>see</u> Docket Entries 13, 17).

In short, Plaintiff's new evidence does not entitle her to a remand under sentence six of Section 405(g).

## III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgement to Reverse, Revise or Remand Commissioner Decision (Docket Entry 13 at 1-6) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 16, 2020